**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**KEVIN RODGERS,**

                            **Plaintiff,**

     vs.                                         **1:14-CV-01162
                                                         (MAD/TWD)**

**RENSSELAER COUNTY SHERIFF'S
DEPARTMENT, JACK MAHAR, KATRINA
DINAN and ELAINE YOUNG,**

                            **Defendants.**

---

**APPEARANCES:**                                    **OF COUNSEL:**

**TULLY, RINCKEY, PLLC**                   **DAVID A. FALLON, ESQ.**
441 New Karner Road
Albany, New York 12205
Attorneys for Plaintiff

**CARTER, CONBOY, CASE,**              **JAMES A. RESILA, ESQ.**
**BLACKMORE, MALONEY
& LAIRD, P.C.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendants
Rensselaer County Sheriff's Department,
Jack Mahar, and Katrina Dinan

**LUIBRAND LAW FIRM, PLLC**          **KEVIN A. LUIBRAND, ESQ.**
950 New Loudon Road
Latham, New York 12110
Attorneys for Defendant Elaine Young

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On September 22, 2014, Kevin Rodgers (hereinafter "Plaintiff"), a corrections officer at

Rensselaer County Jail ("RCJ"), commenced this action against Defendants Rensselaer County

Sheriff's Department (hereinafter "RCSD"), Rensselaer County Sheriff Jack Mahar (hereinafter

"Mahar"), and registered nurses Katrina Dinan and Elaine Young (hereinafter "Dinan" and "Young"). *See* Dkt. No. 1. Plaintiff alleges that Defendants deprived him of his Fourteenth Amendment right to privacy in violation of 42 U.S.C. § 1983 when they accessed his medical records without his consent. *See id.* at ¶¶ 14, 26. Plaintiff named as Defendants Mahar, Dinan, and Young in their individual capacities, as well as Mahar in his official capacity. Further, Plaintiff asserts a municipal liability claim against RCSD for acting pursuant to custom or policy and/or for failing to adequately train, supervise, or discipline employees Dinan and Young. *See id.* at ¶¶ 24, 26, 30, 31, 36, 37.

Currently before the Court are Defendants RCSD, Mahar, and Dinan's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiff's cross-motion to amend the complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. Dkt. Nos. 16-1, 35-2.

## II. BACKGROUND

### A. Plaintiff's Original Complaint

Plaintiff was employed by RCSD as a corrections officer from 1990-1996 and then again from 2003 until the present. *See* Dkt. No. 1 at ¶ 7. Plaintiff asserts that in March of 2013, he received notice from Samaritan Hospital that his medical records had been accessed on multiple occasions without Plaintiff's consent by Defendants Dinan and Young. *Id.* at ¶¶ 8-10. Plaintiff claims that Defendants Dinan and Young are authorized as RCJ nurses to access the hospital's electronic medical record system in order to retrieve inmate's records but that they exceeded their authority when they accessed Plaintiff's records. *Id.* at ¶¶ 11, 24. Plaintiff brings this action under § 1983 for violation of his Fourteenth Amendment right to privacy. *Id.* at ¶ 24. Plaintiff alleges that Defendant Mahar should have known, knew, or even directed Defendants Dinan and Young to access his records. *Id.* at ¶¶ 14, 24, 27.

Plaintiff also brings this claim against RCSD and Sheriff Mahar alleging a pattern and practice at RCJ of high ranking officials improperly accessing computer databases in order to obtain employee's personal and medical information. *Id.* at ¶¶ 14, 15, 32. Plaintiff claims that Defendant Mahar used his medical information in an attempt to terminate him in 2004 and that other employees were subjected to similar actions. *Id.* at ¶ 13. Finally, Plaintiff states that the County failed to adequately train, supervise, and/or discipline Defendants Dinan and Young for exceeding their authority, demonstrating a deliberate indifference to constitutional violations against employees. *Id.* at ¶¶ 35, 36, 38. The original complaint contained forth and fifth causes of action under the Americans with Disabilities Act ("ADA") and Computer Frauds and Abuse Act ("CFFA"), which have subsequently been withdrawn. 42 U.S.C. § 12112; 18 U.S.C. § 1030; Dkt. No. 22-1 at 12.

**B.  Defendants RCSD, Mahar and Dinan's 12(b)(6) Motion to Dismiss**

On November 24, 2014, Defendants RCSD, Mahar, and Dinan filed a Motion to Dismiss pursuant to Rule 12(b)(6). Dkt. No. 16-1. First, Defendants argue that RCSD should be dismissed as a party because a sheriff's department is not a suitable entity under § 1983. *See* Dkt. No. 16-1 at 12. Next, Defendants argue that Plaintiff's *Monell* claims must be dismissed because the complaint fails to plausibly allege a pattern, policy, or custom of accessing employees' private information. *Id*. at 14. Further, Defendants argue that the failure to train and supervise claims must be dismissed because the facts indicate that this was merely an isolated incident about which Defendant Mahar and RCSD had no reason to know. *Id.* at 16.

**C.  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss**

On December 22, 2014, Plaintiff filed an opposition to Defendants' 12(b)(6) motion. Dkt. No. 22-1. Plaintiff reasserts and offers further arguments in support of counts one, two, and three of the complaint and withdraws counts four and five. *Id.* at 12. Plaintiff also requests that the

Court either direct the Clerk to amend the caption of the complaint listing RCSD as a Defendant or grant Plaintiff leave to amend the complaint to name the "County of Rensselaer" as a party instead because

> where a municipality has received notice of the suit against it, and the caption erroneously lists a subdivision of the municipality rather than the municipality itself, it is appropriate to correct the caption of the complaint to identify the municipality as the party defendant, so long as the municipality will not be prejudiced by such substitution.

*Id.* at 2 (citation omitted). Finally, Plaintiff submits that the original complaint is sufficient but requests that, if the Court finds otherwise, that it grant him leave to amend the complaint. *Id.* at 13.

**D.     Defendants' Reply**

In their reply, Defendants again allege that Plaintiff's complaint fails to state a claim. *See* Dkt. No. 25 at 2. Additionally, Defendants argue that Plaintiff fails to identify a constitutional right that was violated, as required under § 1983. *Id.* at 7. Further, Defendants assert that unauthorized access to medical records could be construed as a HIPPA violation and therefore cannot serve as the basis of a private right of action under § 1983. *Id.* at 8-9.

**E.     Plaintiff's Sur-Reply and Cross Motion to Amend the Complaint**

On January 10, 2015, Plaintiff filed a sur-reply requesting denial of Defendants' motion and cross-moving for leave to amend the complaint under Rule 15(a)(2) of the Federal Rules of Civil Procedure. Dkt. Nos. 35-2, 35-3. Plaintiff makes five changes in the proposed amended complaint. First, Plaintiff alters the caption to read "County of Rensselaer" instead of "Rensselaer County Sheriff's Department." Dkt. No. 35-2 at 4. Second, Plaintiff removes the fourth and fifth causes of action, which were previously withdrawn. *Id.* Third, Plaintiff consolidates the first three causes of action from the original complaint into count one of the proposed amended complaint, clarifying that the constitutional right at issue is Plaintiff's right to privacy under the

4

Fourteenth Amendment. *Id.* Plaintiff clarifies that the specific medical condition he suffers from is depression. *See* Dkt. No. 35-4 at 10. Fourth, Plaintiff changes the language of the complaint to indicate that he is seeking punitive damages against the individual Defendants. *See* Dkt. No. 35-2 at 4. Finally, Plaintiff adds a new claim alleging First Amendment retaliation. *Id.*

In support of his First Amendment claim, Plaintiff states that Defendant Mahar placed him on administrative leave on January 30, 2012. *See* Dkt. No. 35–3 at ¶ 15. This adverse action occurred less than one month after Defendant Mahar was re-elected as county sheriff. *Id*. Plaintiff actively campaigned for Defendant Mahar's opponent in both the 2003 election and when Mahar was up for re-election in 2011. *Id.* at ¶¶ 7, 14. Plaintiff asserts that the short length of time between Defendant Mahar's re-election and his decision to put Plaintiff on leave is evidence of a causal connection. *Id.* at ¶ 56.

**F.     Defendants' Opposition to Plaintiff's Cross-Motion for Leave to Amend**

On January 30, 2015, Defendants filed opposition to Plaintiff's motion, arguing that granting leave to amend the complaint would be futile because the proposed amended complaint is deficient. *See* Dkt. No. 37 at 2. Defendants argue that the Fourteenth Amendment protects against unauthorized disclosure of medical information but not improper access. Defendants therefore assert that Plaintiff's rights were not violated. *Id.* at 6. Instead, Defendants again state that improper access of medical records is best construed as a HIPAA violation and cannot therefore serve as the basis of a § 1983 claim. *Id.* In the alternative, Defendants state that even if improper access to medical information is considered a privacy violation, Plaintiff still fails to state a claim because Plaintiff here suffers from depression, which is not a condition that qualifies for constitutional protection. *Id.* at 7-8.

Instead, Defendants argue that Plaintiff should have filed this suit as a violation of the ADA because depression is considered a "disability" under the Act. *Id*. at 10. Since Plaintiff

5

withdrew his ADA claim after failing to properly file his complaint with the Equal Employment Opportunity Commission ("EEOC"), Defendants argue that "he should not be allowed to bring a Section 1983 [claim] to remedy an alleged harm which should have been brought under the ADA." *Id*. at 10.  Finally, Defendants move to dismiss Plaintiff's newly introduced First Amendment violation claim on the grounds that it is time barred under New York's three year statute of limitations. *Id.* at 12.

### III. DISCUSSION

**A.     Standards of Review**

*1. Motion to Dismiss under Rule 12(b)(6)*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

6

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### *2. Motion to Amend a Complaint under Rule 15(a)(2)*

The Federal Rules provide for liberal leave to amend a complaint, and state that a court should freely grant leave to re-plead "when justice so requires." Fed. R. Civ. P. 15(2). It is "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.'" *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting *Nagler v. Admiral Corporation*, 248 F.2d 319, 322 (2d Cir. 1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. General Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so. *See O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)).

### B.     Plaintiff's 42 U.S.C. § 1983 Claims

Section 1983 establishes a civil cause of action for deprivation of rights secured by the Constitution or a federal statue: "Every person who, under color of [state law, subjects] . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

7

any right, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. In order to state a claim under Section 1983, a plaintiff must show that: (1) "some person has deprived him of a federal right," and (2) "the person who deprived him of that right acted under the color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Not only must the conduct deprive the plaintiff of a protected right, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, *reh. denied*, 445 U.S. 920 (1980)). As such, for a plaintiff to recover in a § 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979)) (other citation omitted).

### *1. Defendant RCSD as a Non-Suitable Entity*

Under New York State law, "'a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.'" *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) (quotation omitted). As a result, municipal departments in New York are not amenable to suit. *See id.* (citations omitted). However, where a plaintiff lists a department or subdivision of a municipality in the caption of the complaint, but it is otherwise clear the plaintiff intended to name the municipality, the court can either direct the Clerk to modify the caption or grant the plaintiff leave to amend the complaint to remedy the error. *See United States v. Edwards*, 241 F.R.D. 146, 149 (E.D.N.Y. 2007); *see also Bernier v. N.Y.C.D.O.C.*, No. 96 CIV. 7752 (HB), 1997 WL 639028, *1 (S.D.N.Y. Oct. 15, 1997) (holding that in such instances "the appropriate remedy . . . is not dismissal of the case against the City,

which has received notice and has been defending the action, but amendment of the caption").

In this instance, although RCSD is listed in the caption, Plaintiff properly identifies the municipal Defendant as the "County of Rensselaer" in all relevant point headings and otherwise throughout the complaint. *See* Dkt. No. 1 at 2, 7, 8. Further, Plaintiff properly served the County Clerk, County Executive, and County Attorney, thereby putting the County on notice of this suit against it. *See* Dkt. Nos. 2-2, 2-3, 2-4. As such, this Court grants Plaintiff's motion for leave to amend insofar as the proposed amended complaint properly names the County of Rensselaer as a Defendant.[1] For the same reasons, the Court denies Defendants' motion to dismiss against the County of Rensselaer.

### *2. Fourteenth Amendment Substantive Due Process Claim*

#### *a. Right to Privacy*

To state a substantive due process claim under § 1983, a plaintiff must demonstrate two elements: (1) the plaintiff "had a valid property interest in a benefit that was entitled to constitutional protection;" and (2) "the defendant's actions were 'so outrageously arbitrary as to be a gross abuse of governmental authority.'" *Taluker v. County of Rensselaer*, No. 1:12CV1765, 2013 U.S. Dist. LEXIS 78809, *13 (N.D.N.Y. June 5, 2013) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999)). The right to privacy and confidentiality of the status of one's health is a protected interest under the Fourteenth Amendment. *See Rush v. Aruz*, No. 00Civ3436(LMM), 2004 WL 1770064, *11 (S.D.N.Y. Aug. 6, 2004) (citation omitted); *see also Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). The interest in privacy "goes to the heart of one's right to be left alone." *Loper v. New York City Police Dep't*, 802 F. Supp. 1029, 1042 (S.D.N.Y. 1992).

---

[1] As will be discussed below, Plaintiff's motion to amend the complaint will be granted in part and denied in part.

9

Defendants argue that Plaintiff fails to adequately plead the depravation of a constitutionally protected right. *See* Dkt. No. 25 at 7. Defendants assert that, although the Fourteenth Amendment protects against unauthorized *disclosure* of medical information, it does not protect against improper *access*. See Dkt. No. 37 at 6. The right to privacy "takes two somewhat different forms: the right to personal autonomy . . . and the right to confidentiality (i.e., the right to hold certain information private)." *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) (citations omitted). "As a more general matter, the right to confidentiality includes the right to protection regarding information about the state of one's health." *O'Connor*, 426 F.3d at 201; *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (holding that the right to confidentiality includes the right to protection regarding information about the state of one's health). Although confidentiality is often addressed in the context of unauthorized *disclosure* of medical information, it has been construed to protect against other types of intrusions as well. *See Schwenk v. Kavanaugh*, 4 F. Supp. 2d 110, 115 (N.D.N.Y. 1998) (holding that a plaintiff's right to privacy was violated when a prosecutor improperly possessed his medical files in order to "set an example for the defendants and others who might be tempted to take a short cut in securing possession of a person's mental health records"); *see also O'Connor* 426 F.3d at 201(finding that an employee's right to privacy was violated where an employer improperly demanded that the employee release his medical records).

Some courts have required an additional element of wrongdoing in cases where there was no disclosure. *See Appel v. Spiridon*, 521 Fed. Appx. 9, 11 (2d Cir. 2013) (stating that "invading or intending to invade the privacy of an employee's medical or mental health records will violate the employee's Fourteenth Amendment right to substantive due process if the employer's intent is to injure or to spite the plaintiff"); *see also Lankford v. City of Hobart*, 27 F.3d 477, 479 (10th Cir. 1994) (finding that the right to privacy can protect against an employer accessing an

10

employee's private information by seizing her medical records from a local hospital without her consent); *Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1207, 1301 (D.N.M. 2014) (holding that a government employer may have "violated plaintiffs' substantive due process privacy rights by accessing their records without public disclosure . . . [where] the government officials involved accessed the plaintiffs' confidential information as part of an unlawful campaign of sexual harassment") (citation omitted). Even assuming that this additional element is required, the Court finds that Plaintiff plausibly states a claim against Defendants because unauthorized access to medical records can be construed as a violation of confidentiality. Further, Plaintiff alleges that Defendants accessed his files in bad faith and with the intent to use the information to retaliate against Plaintiff, thus asserting an additional element of wrongdoing. *See* Dkt. No. 35-3 at ¶¶ 20, 33, 34, 36.

Finally, Defendants argue that even if the right to privacy protects against unauthorized access to medical information, Plaintiff nevertheless fails to state a claim because only certain medical conditions – those which are both serious in nature and subject a person to societal discrimination and intolerance – are protected. *Doe*, 15 F.3d at 267. Defendants contend that Plaintiff's alleged medical condition, *i.e.*, depression, is not a condition subject to constitutional protection. Although it is clear that "medical conditions should only be constitutionalized within 'narrow parameters,'" *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1998), the Second Circuit has made it clear that "medical information in general, and information about a person's psychiatric health . . . in particular, is information of the most intimate kind." *O'Conner*, 426 F.3d at 201. For these reasons, the Court denies Defendants' motion to dismiss and grants Plaintiff's cross motion to amend as to this claim.

### *b. The Health Insurance Portability and Accountability Act ("HIPAA")*

Defendants claim that improper access to medical records is best construed as a HIPAA

violation and, as such, Plaintiff was required to "use the mechanisms of that statute to have his claim remedied." Dkt. No. 25 at 8-9. It is well established that, because there is no private right to action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim. *See Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009); *see also Adams v. Eureka Fire Prot. Dist.*, 352 Fed. Appx. 137, 139 (8th Cir. 2009) (holding that "[s]ince HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action"). However, contrary to Defendants' assertions, the fact that there is no private right of action under HIPAA does not preclude Plaintiff's Fourteenth Amendment right to privacy claim because it is predicated on conduct outside the scope of HIPAA.

In support of their position, Defendants cite the standard articulated by the Supreme Court in *Gonzaga* and *Abrams*. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002); *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 126 (2005). In those cases, however, the Supreme Court addressed when a federal statute creates a personal right to enforce pursuant to Section 1983. *See Gonzaga Univ.*, 536 U.S. at 279-80. In the present matter, however, Plaintiff is not seeking to enforce his rights secured by HIPAA. Not once is HIPAA mentioned in either the original or amended complaints. Rather, in both Plaintiff's original and proposed amended complaints, he asserts that Defendants violated his Fourteenth Amendment right to privacy. *See* Dkt. No. 1 at ¶¶ 23, 24; Dkt. No. 35-3 at ¶¶ 32, 33. Since Plaintiff alleges that Defendants violated the Constitution rather than a federal statute, Defendants' reliance on *Gonzaga* and *Abrams* is misplaced. As such, this Court denies Defendants' motion to dismiss on these grounds.

### c. The Americans with Disabilities Act ("ADA")

Next, Defendants state that Plaintiff's § 1983 substantive due process claim should be barred because depression falls within the definition of a "disability" under the ADA and that Act

requires that a plaintiff exhaust all administrative remedies before filing an action in federal court. 42 U.S.C. § 12101; Dkt. No. 37 at 11. Defendants contend that because "Plaintiff failed to exhaust his administrative remedies under the ADA, he should not be allowed to bring a Section 1983 to remedy an alleged harm which should have been brought under the ADA. The Court finds Defendants' argument unavailing. Although any attempt by Plaintiff to enforce rights protected by the ADA through a Section 1983 cause of action may, in fact, be foreclosed because of his failure to exhaust, *See George v. New York City Transit Auth.*, No. 13 Civ. 7986, 2014 WL 3388660, *3 (S.D.N.Y. July 11, 2014) (citations omitted), the proposed amended complaint makes clear that Plaintiff is making no such claim. Rather, the proposed amended complaint clearly indicates that Plaintiff is alleging violations of his Fourteenth Amendment right to privacy, which are outside the scope of the protections afforded by the ADA.

Based on the foregoing, the Court denies Defendants' motion to dismiss.

### *d. Monell Liability*

"Although municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior*." *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 173 (D. Conn. 2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). Despite the fact that *respondeat superior* liability does not lie, a municipal entity or employee sued in his or her official capacity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690-91. Such municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or

widespread, informal custom demonstrating "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent an official policy," or when municipal officers have acquiesced in or condoned a known policy, custom, or practice. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), *cert. denied sub nom.*, *County of Schenectady v. Jeffes*, 531 U.S. 813, 121 S. Ct. 47 (2000)); *see also Wenger v. Canastota Cent. Sch. Dist.*, No. 5:95-CV-1081, 2004 WL 726007, *3 (N.D.N.Y. Apr. 5, 2004).

Defendants claim that Plaintiff fails to plausibly allege a policy or custom of RCJ officials improperly accessing employees' records. *See* Dkt. No. 16-1 at 14. Similarly, Defendants argue that there are no allegations suggesting a failure to train, supervise or discipline Defendants Dinan and Young. *Id.* at 17-19. In Plaintiff's proposed amended complaint, however, he cites to several specific instances where other RCJ employees have allegedly had their medical and criminal records accessed without their consent. *See* Dkt. No. 35-3 at ¶¶ 24-27. Construing all facts in Plaintiff's favor, the Court finds that the facts contained in both the original and proposed amended complaint are sufficient to plausibly state a claim of a municipal policy or custom at RCJ of improper accessing of employees' records.

Similarly, Plaintiff states a plausible claim that the County failed to adequately train, supervise, and or discipline Defendants Dinan and Young regarding exceeding their authority to improperly access employees' records. *See* Dkt. No. 35-3 at ¶¶ 18-19, 21-24.. Plaintiff claims that Defendant Mahar was aware that Defendants Dinan and Young improperly accessed employee records. *See id.* at ¶¶ 18-20, 23. Plaintiff likewise states that Defendant Mahar failed to discipline another RCJ employee after he pled guilty in a separate action to unauthorized use of a computer. *See id.* at ¶ 26. That individual is still an RCJ employee. *Id.*

For these reasons, Defendants' motion to dismiss for failure to state a claim for *Monell* liability is denied.

### *3. First Amendment Retaliation*

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

In count two of the proposed amended complaint, Plaintiff asserts that Defendants retaliated against him for engaging in political speech from 2003 through January 30, 2012, when Plaintiff was finally placed on administrative leave. *See* Dkt. No. 35-3 at ¶ 48. Specifically, Plaintiff states that he was active in the political campaigns of Defendant Mahar's opponents in both the 2003 and 2011 elections for County Sheriff. *Id.* at ¶¶ 7, 14. Defendant Mahar's opponent in 2003 also happened to be Plaintiff's uncle. *Id*. at ¶ 7. Plaintiff was also an active union participant in 2005. *Id*. at ¶ 10. Plaintiff alleges that in retaliation for these activities, Defendant Mahar targeted him with constant harassment and intentionally assigned him to undesirable tasks at RCJ. *Id.* at ¶¶ 11, 12. Defendant Mahar also suspended Plaintiff on five different occasions without pay, each instance of which was eventually deemed baseless. *Id*. at ¶ 11. Further, Plaintiff claims that from 2004 through late January 2012, Defendant Mahar "would routinely tell Rodgers that he should 'go on disability' . . . despite the fact that Rodgers was

medically fit to perform the essential functions of his position." *Id.* at ¶ 13. Finally, on January 30, 2012, just twenty-seven days after being sworn in as Sheriff, Defendant Mahar placed Plaintiff on administrative leave, where he remains to this day. *Id.* at ¶15. Plaintiff states that there is no legitimate justification for Defendant Mahar's actions. *Id.* Defendants move to dismiss this claim on the grounds that once Plaintiff's allegations are properly limited by the controlling statute of limitations, the proposed amended complaint fails to state a plausible retaliation claim. *See* Dkt. No. 37 at 13. The statute of limitations applicable to § 1983 claims is the "statute of limitations applicable to personal injuries occurring in the state in which the appropriate federal court sits." *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993) (citation omitted). In New York State, the statute of limitations for personal injury claims is three years. *See id.* (citing N.Y. Civ. Prac. L. § 214(5) (McKinney 1990)) (other citations omitted); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (holding that § 1983 claims arising in New York are subject to a three-year statute of limitations). Further, accrual begins when the plaintiff "knows or has reason to know of the injury that is the basis for his action." *Pauk v. Bd. of Trustees of City Univ. Of New York*, 654 F.2d 856, 859 (2d Cir. 1981) (citation omitted).

Plaintiff filed his cross-motion to amend the complaint, which includes this new cause of action, on January 10, 2015. *See* Dkt. No. 35-2. Therefore, as Defendants correctly contend, the statute of limitations precludes any alleged incidences of retaliation prior to January 10, 2012.[2]

---

[2] Although Rule 15(c) of the Federal Rules of Civil Procedure allows for new claims in an amended complaint to relate back to the date the original complaint was filed in certain situations, the relation-back doctrine is inapplicable in the present matter. *See* Fed. R. Civ. P. 15(c). "An amendment of a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "In determining whether the claim arises out of the same conduct or occurrence, '[t]he pertinent inquiry . . . is whether the original complaint gave the defendant fair notice of the newly alleged claims.'" *Fama v. Commissioner of Corr. Serv.*, 235 F.3d 804, 815 (2d Cir. 2000) (quoting *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998)). Plaintiff's original complaint does

(continued...)

16

Even when so limited, however, the Court finds that Plaintiff pleads facts sufficient to support his claim against Defendant Mahar. The fact that Plaintiff was placed on administrative leave less than one month after Defendant Mahar was re-elected is well within the time frame courts have accepted as evidence of a causal connection. *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (holding that "[p]roof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action"); *see also Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001) (finding that a time lapse three or more months is "brief enough to support an inference of a causal connection between the free speech and the alleged retaliatory actions"). Further, the date ranges provided by Plaintiff for the alleged ongoing acts of retaliation, including harassment and the assignment of undesirable work tasks, state that such acts continued through "late January, 2012." *See* Dkt. No. 35-3 at ¶¶ 11, 12. Construing all facts in favor of Plaintiff, the Court finds that the proposed amended complaint states a plausible claim of First Amendment retaliation against Defendant Mahar for conduct occurring after January 10, 2012.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to amend the complaint is **GRANTED in part and DENIED in part**;[3] and the Court further

---

[2](...continued)
not assert any facts relating to the alleged retaliation asserted in the proposed amended complaint; and, therefore, Plaintiff's First Amendment retaliation claim does not relate back to the filing date of the original complaint.

[3] As set forth in this Memorandum-Decision and Order, Plaintiff's motion to amend the complaint is only denied insofar as the proposed amended complaint set forth a claim relating to
(continued...)

**ORDERS** that the Defendants' motion to dismiss is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff shall file a signed copy of his amended complaint within **ten (10) days** of the filing date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of this Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 17, 2015
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

³(...continued)
harm stemming from First Amendment retaliation which occurred prior to January 10, 2012.